UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF | CASE NUMBER |
| CABBAGE ALLEY PARTNERSHIP<br>a Louisiana limited partnership<br>    DEBTOR | 04-14039 |
| | CHAPTER 11 |
| W. REED SMITH<br>EVAN PARK HOWELL, III, and<br>MICHAEL C. LEPPER | ADV. PRO. NO |
| VERSUS | 07-1138 |
| FIRST EMMANUEL BAPTIST CHURCH,<br>NEW HOME FULL GOSPEL MINISTRIES, and<br>THE CONGREGATION OF SAINT FRANCIS<br>DE SALLES ROMAN CATHOLIC CHURCH | |

**MEMORANDUM OPINION**

Plaintiffs W. Reed Smith, Evan Park Howell, III, and Michael C. Lepper filed a Motion for Summary Judgment asking this Court to issue judgments in their favor against Defendants First Emmanuel Baptist Church, New Home Full Gospel Ministries, and the Congregation of Saint Francis De Salles Roman Catholic Church ("Churches") for work Plaintiffs performed as counsel to the Debtor in the related bankruptcy case, *In the Matter of Cabbage Alley.* The Defendants oppose the Motion for Summary Judgment and filed a separate Motion to Dismiss. In the Motion to Dismiss, the Churches aver that this Court lacks subject matter jurisdiction over the issues presented in the Complaint.

In light of the Churches' challenge to the progress of the suit, the Court conducted a hearing solely on Defendant's Motion to Dismiss on March 20, 2008. Entering appearances were:

W. Reed Smith, Evan Park Howell, III, and Michael C. Lepper; appearing on their own

behalf

    Kirk Reasonover; appearing on behalf of First Emmanuel Baptist Church

    Gregory Swafford; appearing on behalf of the New Home Full Gospel Ministries

    Richard A. Bordelon and Ralph J. Aucoin; appearing on behalf of The Congregation of Saint Francis De Salles Roman Catholic Church.

At the conclusion of the trial, counsel for the Churches the parties were given leave to submit post-trial briefs on or before March 21, 2008. The Court having considered the pleadings, evidence presented, and arguments of counsel, issues the following Memorandum Opinion.

**Background**

The Churches, along with Bank One and First Commerce Community Development Corporation (FCCDC), are the partners of Cabbage Alley Partnership ("Cabbage Alley"), which developed and operated low-income housing projects in New Orleans. Cabbage Alley is operated as a non-profit. The Churches each own, as general partners, 1/10 of 1% of the partnership. FCCDC, a wholly owned subsidiary of Bank One, owns 7/10 of a 1% equity interest and is the managing general partner. Bank One owns the remaining 99% interest as a limited partner. Cabbage Alley's projects were funded through loans by Bank One.[1]

From inception, Cabbage Alley experienced significant financial difficulties. When defaults on mortgage indebtedness resulted in the institution of a foreclosure action, the general partners discussed the possibility of a bankruptcy reorganization. As general partners, each of these entities was responsible for the partnership's obligations, which were significant. *See*, La.C.C. 2817. Through a reorganization, the Churches hoped to stave off the imposition of liability and maintain

---

[1]Fifth Amended Disclosure Statement, p.4-5.

ownership control over the properties.

In order to induce Bank One to agree to the filing of a voluntary petition for relief, the Churches signed an Indemnification Agreement holding Bank One harmless for any and all professional fees incurred in connection with the filing. On May 27, 2004, Cabbage Alley filed its chapter 11 petition for relief. The Indemnification Agreement was attached to the bankruptcy petition.[2]

Cabbage Alley's Third Amended Plan of Reorganization was confirmed by this Court on December 27, 2006. Relevant portions of the Confirmed Plan provide as follows:

> 2.2 Professional Fee Claims.
> \*         \*         \*
> . . First Emmanuel Baptist Church . . . New Home Full Gospel Ministries . . . and the Congregation of St. Francis de Salles Roman Catholic Church . . . as well as the Debtor and Debtor's estate, shall be legally responsible and fully liable for the full payment of the Allowed Professional Fee Claim, as the Churches are primarily liable for the payment of the professional fees; thus under this payment arrangement, the Debtor is secondarily liable for the payment of professional fees.
> \*         \*         \*
> 9.1 Retention of Jurisdiction. To the extent provided for under 28 U.S.C. § 1334, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for purposes . . .
> \*         \*         \*
> (f) To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's obligations hereunder.

On June 28, 2007, this Court entered Orders approving compensation for Plaintiffs. When the Churches failed to satisfy those fee awards, this Adversary was filed. The Complaint seeks enforcement of the terms of the Plan, specifically: that judgment be rendered against the Churches for the full payment of all professional fees and costs previously awarded.

---

[2] Docket no. 1.

-3-

**Law and Discussion**

In the Motion to Dismiss, First Emmanuel Baptist Church and New Home Full Gospel Ministries ("Movers"), assert that this Court lacks subject matter jurisdiction over the issues presented by the Complaint. The Court examines the merits of the Motion under Bankruptcy Rule 7012, which incorporates Fed.RuleCiv.P. 12.

In determining the merits of a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which may be in dispute. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). *citing, Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id., citing, Home Builders Ass'n of Miss. Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The subject matter jurisdiction of the bankruptcy courts is circumscribed by 28 U.S.C. §§ 157 and 1334. *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002). Before a plan is confirmed, a bankruptcy court has broad jurisdiction. A matter need only be "related to" the bankruptcy in order to give the court jurisdiction. *Id.* at 304. "A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have any effect on the estate becoming administered in bankruptcy." *Id.*

"Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). After

confirmation, the Court's jurisdiction narrows, as "the debtor's estate, and thus bankruptcy jurisdiction, cease to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390-91.

Since Debtor's plan was confirmed prior to the institution of this Adversary, this Court will only have subject matter jurisdiction over the issues presented if they pertain to the implementation or execution of the Plan.

The Third Amended Plan of Reorganization provides that the Churches will be primarily responsible for the satisfaction of professional fees. This provision was an integral part of the plan and the result of negotiations between the Churches, Debtor, FCCDC and Bank One. Without delving too far into the history of this case, it became apparent to this Court in the fall of 2005, that Debtor lacked either present funds, income, or borrowing capacity to satisfy the mounting professional fees and other administrative expenses it was incurring. Hurricane Katrina had caused extensive damage to the estate's properties and with rising construction costs, it was unclear if the funds available from insurance would be sufficient to rehabilitate and repair them. In addition, due to the evacuation of the city and the uninhabitable condition of the apartment complexes, the Debtor had little income and could not expect to generate more income for some time. Assurances were made to the Court that the Churches would fund the administrative expenses of the case. This allowed for continued progress of the case and the ultimate agreement between Bank One and Debtor regarding the rehabilitation of the properties and emergence from bankruptcy.

In order to confirm a plan, 11 U.S.C. § 1129(a)(9) requires payment of administrative expenses in full on the Effective Date. In this case, Debtor lacked the funds necessary to satisfy administrative expenses, specifically professional fees, on the Effective Date. Counsel for Debtors

took the unusual step of objecting to the Plan they had drafted for Debtor based on this point. Counsel for Debtor and Movers announced an agreement in open court regarding the satisfaction of administrative expenses that enabled this Court to confirm Debtor's plan.

The agreement charged the Churches with the primary (rather than secondary) responsibility for the satisfaction of Debtor's administrative expenses. Under the agreement the Churches were primarily liable for the payment of professional fees. The agreement was incorporated into the plan's terms. Movers have evidently not honored this agreement, and plaintiffs seek its enforcement.

The facts of this dispute are remarkably similar to those found in *In the Matter of Case*, 937 F.2d 1014 (5th Cir. 1991). In *Case*, a $280,000 prepetition claim was settled for $75,000 through the terms of a plan. The plan provided that the settlement amount would be evidenced by a promissory note. Without the settlement, the plan could not have been confirmed.

Following confirmation, debtor defaulted on the note and the creditor sued to collect the amounts owed in state court. Debtor counterclaimed, raising affirmative defenses to the note's execution, including duress. At this point, the creditor filed an action in the bankruptcy court seeking an order confirming the obligations of debtor under the plan. Debtor objected to the bankruptcy court's jurisdiction since the dispute arose post-confirmation.

The Fifth Circuit found that because the note satisfied a prepetition debt, was confected as a result of negotiations between the parties and incorporated into the plan, and was necessary for the Debtor to obtain confirmation, the bankruptcy court maintained subject matter jurisdiction over any disputes concerning its execution. *Id.* at 1020.

Case 07-01138    Doc 89    Filed 04/02/08    Entered 04/02/08 09:30:02    Main Document
      Page 7 of 9

By comparing *Case* to *In re Craig's Stores of Texas, Inc.*, and *In re U.S. Brass Corp.*, the delineation of post-confirmation jurisdiction is illuminated. In *Craig's Stores*, the debtor brought suit, post-confirmation, to enforce a pre-confirmation contract that was assumed in the plan of reorganization. The Fifth Circuit found that the bankruptcy court did not have jurisdiction because the post-confirmation dispute had "nothing to do with any obligation created by the debtor's reorganization plan." *In re Craig's Stores* 266 F.3d at 391. Although the contract was assumed in the plan, it was not critical to confirmation, because the dispute arose post-confirmation and was based on post-confirmation activities.

In *In re U.S. Brass Corporation*, 301 F.3d 296 (5th Cir. 2002), Debtor's plan provided that certain prepetition disputes would be resolved post-confirmation in a court of competent jurisdiction. Following confirmation, the parties to the disputes petitioned the bankruptcy court for authority to settle the issues through arbitration. Third parties to the actions objected to the bankruptcy court's authority to hear the motion.

The Fifth Circuit held that the bankruptcy court retained subject matter jurisdiction to both interpret and enforce the plan's terms. Because resolution by arbitration did not fall squarely with the plan's terms, the bankruptcy court was the proper court to decide whether arbitration was authorized under the plan. In denying the requested relief, the Court was properly exercising its jurisdiction to enforce the plan's terms, i.e. by requiring the parties to submit to a court of competent jurisdiction rather than a non-judicial forum. The Fifth Circuit stated, "We find that §1146(b) does not confer substantive rights so much as it empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan." *U.S. Brass* at 305-306.

This Court has jurisdiction because the Plaintiff's claims against the Churches arises from the terms of the Third Amended Plan of Reorganization, itself. But for the Plan, Debtor would be primarily liable for the professional fees in question and the Churches' liability would only be secondary or contingent in the event Debtor could not pay. The plan's terms change this relationship, creating *primary* liability against the Churches for this debt. The essence of Movers' defense to payment is a challenge of their obligation to pay, which raises the question of the Plan's enforceability.

Under section 9.1(f) of the Plan, this court retained subject matter jurisdiction "[t]o determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's obligations hereunder."

The issues presented by this Complaint are certainly related to the bankruptcy case. As administrative expenses, the professional fees and costs involved would not exist but for the bankruptcy itself. They were incurred during the case's administration and approved for payment by several of this Court's Orders. Finally, their repayment was assumed by the Churches under the terms of the plan in a significant deviation from state law. Without this assumption, the plan would not have been confirmed, because it would not have been feasible. The Churches have challenged the administrative creditors ability to enforce their obligation to pay under the plan. Clearly this case

is on all fours with *Case*. It is for these reasons that the Court concludes that subject matter jurisdiction exists over the issues presented by the Complaint.

New Orleans, Louisiana, April 1, 2008.

                                                  Hon. Elizabeth W. Magner
                                                  U.S. Bankruptcy Judge